Judge Buckner,
delivered the opinion of the court.
.On the 12th day of March, 1827,the appellant sued out a writ for a forcible entry and detainer against the appellee, in the county of Boone. Upon the trial before the magistrate-, the jury by their inquest, found in favor of Cox. Buford conceiving himself aggrieved, by the finding of the-jury, travers. *583 ed the truth of it. The cause was removed to the circuit court, .where it was tried, and the jury-having found the inquest to be true, Buford moved litó circuit court for a new trial, upon the grounds, that the verdict was contrary to law, evidence and the instructionsof the court; that the court'gave erroneous instructions to the jury, on the motion of the appellee; and improperly refused to give others, moved for hy the appellant. The motion was overruled and judgment entered in pursuance of the verdict; from which Buford appealed, and has assigned' such errors, as call jn question, the correctness of the various decisions of •the circuit court.
The land in controversy, had been conveyed by the commonwealth of Virginia to Bartlett Bennett by patent, bearing date 'in October, 1789, and had been conveyed indirectly to the appellant in 1797. For the purpose of shewing the boundaries of the tract, the patent and deeds of conveyance were read as evidence.
From the evidence in the trial, it appears that on -the 29th of July, 1809, the appellant and Nathan Truesdale, entered into a written contract, in wmch,, it is stipulated, that Truesdale was authorized to dig a well or wells, on any part of the tract aforesaid, for salt water, and that should he find such, as would, in his opinion, justify the expense of erecting and continuing a furnace, Buford should lay off live hundred of the tract to him, and put him in possession of it, for the purpose of making salt. Truesdale was also authorized to clear a farm, get timber for fencing it, and to enjoy it during his life, if he continued to make-salt; but not otherwise. If Truesdale failed in getting salt water, Buford was bound to pay one half of the expense. He made an attempt and did fail; and on the 11th of Nov. 1815, Buford paid to him fifty dollars in full for his part -of the expenses incurred, and in discharge of the agreement, with an endorsement to that effect on the written agreement,signed by Truesdale. 'In 1809, however, subsequent to -the execution of the covenant referred to, ¡he made an improvement, and settled upon the'land,on which he continued to reside until sometime during the year 1815, when he went -away, leaving his wife on the land. She remained there for sometime, and then received a verbal lease from Buford, in virture of which she continued to hold *584 possession, until the spring of 1825, when she removed from the land, leaving her son-in-law Williams there, whoresided at the same place* totee day of the trial. He had, by permission of his mother-in-law, settled on a part of the aforesaid tract of Buford, in 1818, In 18.lt), he received from Buford a written lease, authorizing him to remain, which expired in 1823; after that he occupied, under a verbal contract with him. On the ibth of December, 1820, the appellee took a written lease for five years from James, M. Gaines, for the whole of the twelve hundred acres, claimed by Buford, to commence, on the 1st day of January, 1827; under which he entered, and commenced-an improvement near to the farm occupied by Williams, Buford's tenant, and \ as progressing with it, when the wait in tin- case issued. Gaines lived on an adjoining tract of land; but under what cla;m he held previous to the* 5t,i of March, 18 ii, is not explained by the record. He set up title io t ie one i.iousand two hundred acres claimed by Buford, under a patent issued to John Jiarvie, fortwelve thousand one Hundred and forty eight acres, dated Itth of May, 1.786, which, with a deed from the patenlee to uarrolt and Duval, as tenants in common, dated ith of May, 179J, for the whole tract, and a deed from Barrett to said Gaines, dated 5th of Maicb, 1824, for an undivided moiety of it, was read as evidence on the part of Cox. It is probable that this patent covets the whole of Buford's claim; but there was no proof intiodnced establishing the fact, although the cause seems to have been conducted by each of the parties litigant, on that supposition; and it was provecí that Cox and Williams lived within the boundaries of it.
A witness introduced by the appellee, swore, that in T82J, lie lived with Gaines, in capacity of overseer; and on that part of his farm, which adjoined Buford’s land, he had prepared aplace to seta fence, which Gaines informed him, was inside of Buford's claim-; that Gaines directed him not to intrude on it; wherefore, he made the fence nearer to the uouse of Caines j that in February, 1825, whilst he was still engaged on the farm of Gaines, he was directed by him, .o remove the same fence, which he did, and Games «aid, at the time he directed him to set the fence out, he *585 liad caused to be done, for the purpose of getting possession of Buford’s one thousand two hundred acre tract. Another witness introduced on the same side, -states, that in February, 1825, Gaines had a piece’ of ground cleared, inside of a line which Gaines shewed io witness as Buford’s, (and which was generally reputed to be a line of his one thousand two hundred •acre tract,) of from three to five poles in width, and •thirty or forty poles in length, which he enclosed by a fence. When the witness inquired of him his object in doing it,he replied, that he could communicate it to him confidentially; that it was to obtain possession of Buford’s tract, as he had purchased Harvie’s claim, ■which covered it.
Another witness stated, ¡that he had seen the line of 'Buford’s survey, which it is said, was included by -Gaines’ fence, that the fence appeared to be -on it for some distance; but for the remainder of its extent,included it by about two feet. On a second experiment •made by him, it included it by a greater space. The result of a third trial, pursuing each time, the course -called for in the deed to Buford, was but little variant from the other two, the line entering Gaines’ enclosure, •so as to include, at the point of entrance about three or four feet of it, and about a pole and a half on the opposite point. He was not acquainted with the line as marked.
Williams, Bufprd’s tenant, swore, that until the day of trial, he had not heard, nor did he know, that Gaines had attempted to include any- part of Buford’s survey, •although he lived within a half mile of the place, and had passed it.
A witness named Everett, stated, that in 18)24, he also lived with Gaines as an overseer.; that by his direction, he'placed the string of fence alluded to, on Buford’s line, and did not believe it had been since removed. Other witnesses, stated circumstances, shewing that if any part of Buford’s survey, is within •Gaines’ enclosure,it is a yery small slip..
On the trial of the cause, the court correctly instructed the jury, that unless they should believe from the evidence, that Buford was in the actual po- ession ■of the land in. controversy, at the time Cox entered, *586 they ought to find for Cox. We do not look upon it as-necessary,to state all the'testimony, conducing to shew, with whom the possession vested. It is sufficient to ‘ say, that it is, by no.means clear, whether that part of Buford’s tract, on which Cox had entered, should be considered,"at the time of that entry, as in the actual possession of Buford, or his tenant. There is no doubt that Buford had a right to lease to any person, such portion of the tract, except that which Williams had under enclosure, as he might think proper; but it would not thence’follow, that the writ, for the forcible entry and detainer complained of, should be in his name. The case of Vanhorne and wife vs. Tilley, 1 Monroe, 50, shews, that notwithstanding such a right on the part of the landlord, the tenant, if in possession, can-alone be authorized to maintain the writ. But we are of opinion,-that the court erred in giving other in-, s true lions to the prejudice of the appellant, at thein-stance of the appellee, and in refusing to give some .moved for by him. The latter part of the fifth and eight instruction given-on the motion of Cox, and ■which was excepted >.o-by his adversary, is based'on the assumption, that Gaines had a right of entry under his claim, derived ‘from Harvie, into that part of Buford’s'tract, which, it is insisted, he enclosed in -1825. ’
There was no proof before the jury, unless Gaines’ assertion be/so considered, that JTarvie’s patent covered that part of the appellant’s land, and Gaines’ right of entry there, cannot be a-'sumed. But that difficulty will, no doubt, be removed, when the cause shall be retried.
We shall now proceed to examine some of the instructions moved for by the appellant, which the court '-refused to give. The Cthis-inthe following words; “if the jury shall believe, from the evidence, that the fence-of Gaines is upon the marked boundary of Buford’s survey of one thousand two hundred acres, Gaines can have no possession, within Buford’s claim, although the course called for, in the deed for it to Buford, may vary from said marked line.”- Thatthisinstruction should have been given, cannot b.e doubted, when the testimony respecting the location of the appellee’s fence is recollected. It has been insisted on *587 his part, that it was properly rejected, because the testiqiony clearly proved, that the course included Gaines’ fence, and the marked boundary still further. have already stated the prominent features of the testimony on those points, and we do not intend to insinuate an opinion with respect ,to its preponderance, on the one side or the other. But should it be even conceded, that the weight of it was, as assumed, it would not follow, that the instruction asked for was improper.
The boundathe^oourae °' called for ip tl!«dded.
The boundary as marked, must control the course called for in the deed. Some of the testimony was relied on to shew, that the line run-according to-that course, is within Gaines’ inclosure. Other testimony,-that of Everett maybe particularly meniioned conduced to shew, that the fence was on the appellant’s boundary. These were matters of fact, on which it was the-province of the jury to determine;-but to .enable them to do justice between the parties, they ought to have been informed correctly as to the law.
The third and fourth -instructions moved for by tire appellant, were given,and need-not be noticed. 'The first, fifth and seventh may be considered together, because they were intended to present, substantially the same point. The fir.st is as follows: “If the jury shall believe from the, evidence, that Gaines entered upon, and took possession of land, within the boundary of said Buford’s one thousand two hundred acre tract, in a secret, and not in an open and ■ notorious manner, that then,his possession thus obtained,is confined to his enclosure.”
If Gaines was vested with the elder legal title to the - land in controversy, there can be no doubt, that he had a right to make an entry upon it, unless his right had been tolled by am adverse- possession ,of twenty years, (which is not pretended to be the fact,) or unless it can be considered as lost, under the operation of the act of February 9th, 1809, “to compel the speedy adjustment of land claims.” If he made such an entry,., as the law will recognize, carrying with it the legal consequences of a formal and notorious entry on a part of the land, covered by these patents, under which he and Buford respectively claimed, in the name of, and with the intention of taking possession of the whole in* *588 terference, he would, according to'the'doctrine settled’in the case of Word and Bodley, V Littell, 88, and that of Taylor vs. Shields’ heirs, Ibid. 295, by construction of law, be so possessed; and- being so possessed, the entry of Cox, his tenant, would be justified*. Smith, &c. vs. Morrow, V Littell, 210. But it is not indispensably necessary to consider the principles settled in those cases, .because, if the instruction last mentioned was erroneously refused, (and we are of' opinion that it was,) the giving of it, if the cause be again tried, may supersede the necessity of doing so.
Blackstone, in* his commentaries, vol. Ill, page 174, speaking of the" extra-judicial and summary remedy by entry,- says, “the-party entitled, may make a formal, but peaceable entry,-declaring that thereby he takes possession; which.notorious act of ownership, is eqQivalent to-a feodal investiture by the lord, or he may enter on any part of it, in the same- county,, declaring it to be in thename of’the whole; but if it lies in different counties, he must make different entries; for the notoriety of such entry or claim, to the pares or freeholders of Westmoreland, is not any notoriety, to the' pares or freeholders of Sussex.” Again, “if the claim-ant be detered from, entering, by menaces, or bodily fear, he may make claim, as near to the estate as he can, with the like forms and solemnities.” “Such an entry,,(says the same author,”):giv-es a man a seizin, ok puts into immediate possession, him that hath right of entry on the estate, and thereby, makes him complete owner, and capable of conveying it, from himself, by either descent or purchase.” In vol. II, page 209, in his chapter upon title by. descent, he says, “for the law requires this notoriety of possession as evidence, that the ancestor had that property in himself, which is now to be transmitted to his heir, which notoriety had'succeeded'in the place of the ancient feodal'investiture., whereby, while feuds were precarious, tlie vassal on the-descent of lands, was formerly admitted in the lord’s court, and there received his seizin in the nature of a renewal of his ancestor’s grant, in .the presence of the feodal peers,, till at length, when the-right of succession became indefeasible, an entry on any part of the land's within the county, or other notorious possession was admitted, as equivalent to the-formal grant of seizin” &c.
Entry upon land,to be valid, and to have attached to it all the legal con - sequences pf a valid entry, must be open and notorious.
To determine whether possession taken and continued by enclosure is or not open and notorious, the concomitant pircumstauces ami the condition of the country must be considered.
To render an entry on land valid, no specified number of witnesses is necessary to be present when it is made.
Entry on land must not be • made in a sc-, cret and fraudulent manner so as to conceal it from the neighborhood, Entry on laud must be m :do in sucha manner as will afford the means to those interested to ascertain the fact by ordí» nary dilia
*589 Prom the foregoing authority, as well as from the most obvious reason, an entry, to be valid, and to have attached to it, all the legal consequence of such an entry, must be open and notorious."
It has been urged on the part of Cox, that possessesion taken and continued by enclosure, cannot be otherwise than open and notorious. The correctness, or incorrectness of that position must depend upon the concomitant circumstances, and in construing them, regard must be had to the condition of the country where it is made. Au encroachment by enclosure of even a foot in width upon land by .one person, which is claimed by another, would be much better calculated to attract attention, in some counties than in others. -It is impossible to lay down any satisfactory rule with respect to the quantity of land, which must be embraced by the enclosure, so that notoriety must be considered as necessarily attached to it; nor do we suppose, that any specified number of witnesses is necessary to be present when an entry is made, to render'it valid; but it may be safely assumed, as a correct principle, that it must not be secretly made, with the fraudulent design of concealing it, and so as actually to succeed in concealing it from the neighborhood. It must be made in such a manner, as will afford the means to those interested, to ascertain the fact, by ordinary diligence; because otherwise, the opposite claimant, who- is possessed in fact of the land, cannot know that it is' necessary to sue. He may consider himself as quietly possessed of land, or have been actually settled upon it such a length of time as the law declares shall bar all actions against him for it, and then, to his great mortification, learn for the first time, that he must lose his land, because some man who sets up claim to it, under an elder grant, more than twoyehrs before, had extended a fence, which had been previously placed on the dividing line between them six inches or a foot, upon his tract, so secretly and artfully as to evade the observation of himself, and the whole neighborhood; or that in presence of a Son, o~ ©ne confidential friend, he had entered upon it, injoining secresy, and actually succeeding in concealing it. Such artifice cannot be countenanced in a court of justice.
Hoggin, for appellant; Mills and Brown, Wickliffe and Wooky; for appellees.
We do not wish, however, to be understood as sugResting any opinion in this case, with respect to the" fairness or unfairness of the manner in which the entry of Gaines was made, if made at all* We intend (0 say only, on this point, that the testimony in the cause, conduced to shew, that the entry was made, if made at all, secretly and unfairly; for it was not proved, that a man in the neighborhood or county, knew of it, except the. overseer and one other, to whom it was communicated in confidence, as a matter not to be spoken of. Under such circumstances,-the instruction asked for should have been given, leaving it to the jury to determine as to the facts. The second instruction moved for by the appellant, is founded on the supposition, that although Harvie’s elder title may have been regularly conveyed to Gaines, his right of entry had’ been tolled under the act of 1809, by a settlement for more than seven years on Buford’s land, by his tenants, previous to 1825.
It has been already shewn, that if the land in controversy, was in the actual possession of Williams at the time the writ in-this case whs issued, Buford cannot maintain it; and if Williams was in possession to the extent of his enclosure only, during 'the-time he held' it, the statute alluded to, does not apply; for that act bars not by possession, but by settlement or residence on the land; even clearing and cultivating is not sufficient. See Hog vs. Perry, I Littell, 172-3; Smith vs. Nowells, II Littell, 160; Hite’s heirs vs. Shrader, III Littell, 446; May, &c. vs. Jones, &c. IV Littell, 24.
Whether the landlord can avail himself of the settlement of his tenant, for the time pointed out by the act, under the proper kind of title, is a question not necessary to be decided in this case; and we shall make no suggestion of an opinión concerning it, especially,, as the court is not full.
The judgment of the circuit court must be reversed with costs,and the cause remanded for further proceedings to be had not inconsistent with this opinion.